United States District Court
Southern District of Texas
**ENTERED**
July 02, 2020
David J. Bradley, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| MANUEL LOBO, Individually and on | § | |
| Behalf of All Others Similarly Situated, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:19-CV-3934 |
| | § | |
| SPRINT SAFETY, INC., | § | |
| Defendant. | §# | |

## MEMORANDUM AND ORDER

Before the Court in this Fair Labor Standards Act ("FLSA") overtime case is

Plaintiff Manuel Lobo's ("Plaintiff's") Motion for Class Certification and Expedited

Discovery [Doc. # 36] ("Motion").  Defendant Sprint Safety, Inc. ("Defendant") has

responded,[1] Plaintiff has replied,[2] and Defendant has filed a sur-reply.[3]  The Motion

is ripe for decision.  Based on the parties' briefing, pertinent matters of record, and

relevant legal authorities, the Court **grants in part and denies in part** Plaintiff's

Motion.

---

[1]     Opposition to Plaintiff's Motion for Class Certification and Expedited Discovery [Doc. # 37] ("Defendant's Response").

[2]     Plaintiff Manuel Lobo's Reply in Support of his Opposed Motion for Class Certification & Expedited Discovery [Doc. # 40] ("Plaintiff's Reply").

[3]     Sprint Safety's Sur-Reply in Response to Plaintiff's Reply in Support of Motion for Class Certification and Expedited Discovery [Doc. # 41-1] ("Defendant's Sur-Reply").

## I.   <u>BACKGROUND</u>

The following factual summary is based on evidence attached to Plaintiff's Motion, Defendant's Response, and facts admitted in Defendant's Answer to Plaintiff's Complaint.

Defendant provided industrial safety equipment and services to energy industrial plants.[4]  Defendant sold and rented safety equipment on site at industrial plants undergoing maintenance, upgrades, or repairs, also called "turnarounds."[5] Defendant is a Delaware corporation with offices in Houston.[6]  Defendant employs Turnaround Technicians ("Putative Class Members") to stock shelves with rental equipment and personal protective equipment, assist with inventory count, inspect, test and maintain safety equipment, and issue and receive rental equipment.[7]

Plaintiff worked for Defendant as a Turnaround Technician from approximately January 2016 until June 2018.[8]   As a Turnaround Technician,

---

[4]   Exhibit 1 to Defendant's Response, Declaration of Thomas Heslin ("Heslin Decl."), [Doc. # 37-1] ¶ 5.

[5]   *Id.* ¶ 6.

[6]   Defendant's Answer and Affirmative Defenses to Plaintiff's Original Complaint ("Defendant's Answer") [Doc. # 35] ¶¶ 7, 9.

[7]   Heslin Decl. ¶¶ 5-7; Lobo Decl. ¶ 9.

[8]   Defendant's Answer ¶ 14; Exhibit A to Plaintiff's Motion, Declaration of Manuel Lobo ("Lobo Decl."), [Doc. # 36-1] ¶2.

Plaintiff was required to work 12 hour-shifts, was classified as non-exempt, and was paid overtime.[9]  During his employment with Defendant, Plaintiff worked on at least seven different turnaround projects at different plants with different supervisors.[10]

Turnaround Technicians were subject to a meal break policy which automatically deducted thirty minutes from every worker on every shift for meals, regardless of whether they took a thirty-minute uninterrupted meal break.[11]  Plaintiff and other Turnaround Technicians never clocked out or in for uninterrupted meal breaks because they were not allowed uninterrupted meal breaks.[12]

Plaintiff claims that he and other Turnaround Technicians were instructed by their supervisors not to leave their posts for lunch breaks.[13]  Rather than take their lunch break at a "lunch tent" on the jobsite, Plaintiff claims he and other Turnaround

---

[9]     Lobo Decl. ¶ 9; Exhibit B to Plaintiff's Motion, Turnaround Technician Job Description, [Doc. # 36-2].

[10]    Lobo Decl. ¶ 5

[11]    Lobo Decl. ¶ 15; Exhibit C to Plaintiff's Motion, Weekly Time Records & Pay Statements, [Doc. # 36-3]; Exhibit D to Plaintiff's Motion, Sprint Safety's Employee Handbook, [Doc. # 36-4] at 27; Exhibit H to Plaintiff's Motion, Declaration of Marshae Essett ("Essett Decl."), [Doc # 36-8] ¶¶ 7-8.

[12]    Lobo Decl. ¶¶ 17-22; Essett Decl. ¶¶ 7-8.

[13]    Lobo Decl. ¶¶ 19-20; Essett Decl. ¶¶ 7-8.

Technicians were instructed by their supervisors to eat lunch at their posts so they could be available to work during their lunch breaks.[14]

Plaintiff does not recall a single day during his three years of employment with Defendant when he was able to take an uninterrupted 30-minute lunch break.[15] When Plaintiff attempted to take meal breaks at his post, he claims that he was almost always interrupted by Defendant's employees or other workers on the jobsite that needed equipment.[16]  Plaintiff was required to be available at all times and was not allowed to turn anyone away during his lunch break.[17]

Plaintiff also claims that even though Defendant was aware his and other Turnaround Technicians' meal breaks were often interrupted or not taken at all, Defendant would automatically deduct thirty minutes from their shifts.[18]

Plaintiff and other Turnaround Technicians could avoid the automatic meal break deduction by correcting their time records and having their supervisors

---

[14]     Lobo Decl. ¶ 21.

[15]     *Id.* ¶ 18.

[16]     *Id.* ¶ 19.

[17]     *Id.* ¶¶ 19-20.

[18]     *Id.* ¶ 17.

approve the change.[19]  Plaintiff claims that correcting one's time records presents logistical issues and impermissibly shifts the burden of recordkeeping from the employer to the employee.[20]

In 2015, following an investigation, the U.S. Department of Labor ("DOL") found Defendant in violation of the FLSA for its automatic lunch break deduction policy.[21]  The DOL determined that Defendant failed to pay proper wages to 37 employees as a result of the automatic deduction.[22] Following the DOL investigation and findings, Defendant agreed to correct the problem going forward.[23]  Plaintiff argues that Defendant never corrected the problem and continues to automatically deduct meal breaks in violation of the FLSA.[24]

---

[19]   Exhibit C to Plaintiff's Motion, Weekly Time Records & Pay Statements, [Doc. # 36-3]; Exhibit D to Plaintiff's Motion, Sprint Safety's Employee Handbook, [Doc. # 36-4] at 27.

[20]   Motion at 10.

[21]   Exhibit E to Plaintiff's Motion, U.S. DOL Records, Case ID: 1773727, [Doc. # 36-5] at 4.

[22]   *Id.* at 3-4.

[23]   *Id.* at 5.

[24]   Motion at 9.

Plaintiff seeks conditional certification of this case as a collective action. Plaintiff requests that the Court conditionally certify a putative class of:

> All Turnaround Technicians who were subject to Sprint Safety's automatic meal break deduction within the last three years.[25]

## II.   **LEGAL STANDARD**

Section 216(b) of the FLSA provides a private right of action for employees against employers who violate the Act.  Similarly situated employees may "opt-in" to a suit under § 207(a) and proceed as a collective.  "Courts recognize two methods for determining whether to certify a collective action on a conditional basis or authorize notice to similarly situated employees: the spurious class action *Shushan* approach, or the two-step *Lusardi* approach."  *Hernandez v. Helix Energy Solutions Grp., Inc.*, No. H-18-1588, 2018 WL 6067293, at *2 (S.D. Tex. Nov. 20, 2018) (Rosenthal, J.).  The Fifth Circuit has not determined which method is more appropriate, but district courts in the Fifth Circuit "have uniformly used [the *Lusardi* approach] to determine whether a collective [action] should be certified under the FLSA."  *Johnson v. Big Lots Stores, Inc.*, No. 04-3201, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007); *see also Acevedo v. Allsup's Convenience Stores, Inc.*,

---

[25]    Motion at 2.  Plaintiff's Motion also contains numerous allegations that he and other Putative Class Members were required to use pre-filled time sheets that underreported their hours worked.  *See* Lobo Decl. ¶¶11-13.  Because Plaintiff's proposed class only relates to Defendant's automatic meal break deduction policy, allegations related to inaccurate shift start and end times are not discussed in this Order.

600 F.3d 516, 519 (5th Cir. 2010) (noting that neither method has been formally adopted); *Sandoz v. Cingular Wireless*, 553 F.3d 913, 915 n.2 (5th Cir. 2008) (observing that most cases proceed using the two-step Lusardi approach).

"The first step of the *Lusardi* analysis, the notice stage, requires a minimal showing by the plaintiff that (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit." *Hernandez*, 2018 WL 6067293, at *2. In this first step,

> the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is usually made using a fairly lenient standard, and typically results in conditional certification of a representative class. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in.

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace v. Costa*, 539 U.S. 90 (2003). Courts do not review the underlying merits of the action at the notice stage. *See McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010). "[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written

consent with the court." *Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-CV-363, 2017 WL 3866424, at *3 (S.D. Tex. Sept. 5, 2017).[26]

Although motions for conditional certification are subject to a "fairly lenient standard," *Mooney*, 54 F.3d at 1214, court may deny a motion for conditional certification if the action arises from "circumstances that are personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005). A court may modify an FLSA collective action class definition if the "proposed class action definition does not encompass only 'similarly situated' employees." *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)).

---

[26] The second, more searching stage of the *Lusardi* analysis is typically precipitated by a motion for decertification by the defendant. "If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Mooney*, 54 F.3d 1207 at 1214. Only at the decertification stage do district courts look to the underlying merits of the action. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013).

## III.   DISCUSSION

Plaintiff requests that the Court conditionally certify a collective action of Putative Class Members, approve the sending of notice to Putative Class Members, and order Defendant to produce Putative Class Members' contact information.

### A.   Conditional Certification

Plaintiff argues that conditional certification is proper because he has shown that (1) other aggrieved individuals exist and were victims of a common policy, (2) those individuals are similarly situated to Plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to this suit. *See Hernandez*, 2018 WL 6067293, at *2.   Defendant argues that conditional certification is not appropriate because there is no evidence that any aggrieved individuals were victims of a common policy, are similarly situated to Plaintiff, and are likely to opt in to this suit.

#### 1.   Whether Other "Aggrieved Individuals" Were Victims of a Common Policy

Plaintiff argues that he and other Putative Class Members were victims of a common policy or practice by Defendant that required them to work uncompensated meal breaks.  In response, Defendant argues that its automatic meal break deduction policy is not *per se* unlawful under the FLSA, and it is only the application of that policy that could potentially result in a violation.  Since violations depend on the application of Defendant's policy with respect to specific Putative Class Members,

Defendant argues that individual issues predominate and collective treatment is inappropriate.

Defendant's employee handbook states:

Non-exempt employees should clock out when leaving for lunch or beginning their lunch break and clock back in when their lunch break has ended.  A 30-minute lunch break is deducted when the employee is unable to clock out and clock back in during lunch.  The automatic deduction will be adjusted if an employee took a longer lunch or if the employee was required to work during lunch and did not receive a 30-minute break.[27]

Plaintiff claims that this policy applied to all Putative Class Members, and that all Putative Class Members were required to be on call during their meal breaks and, as a result, regularly took interrupted meal breaks or missed their meal breaks entirely.[28]

The FLSA requires that employees be paid at a rate not less than one-and-a-half times their regular rates for all hours worked in excess of forty per work week. 29 U.S.C. § 207(a)(1).[29]  An employer who knows an employee is working overtime "cannot stand idly by and allow an employee to perform overtime work without

---

[27]   Exhibit D to Plaintiff's Motion, Sprint Safety's Employee Handbook, [Doc. # 36-4] at 27; *see also* Exhibit C to Plaintiff's Motion, Weekly Time Records & Pay Statements, [Doc. # 36-3].

[28]   Lobo Decl. ¶¶ 15-16.

[29]   The Putative Class Members worked 12-hour shifts five to seven days per week. Lobo Decl. ¶¶ 7-9.  Accordingly, work done on their lunch breaks would be considered overtime.

proper compensation, even if the employee does not make a claim for the overtime compensation." *Newton v. City of Henderson*, 47 F.3d 746, 748 (5th Cir. 1995). However, "if the employee fails to notify the employer or deliberately prevents the employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of § 207." *Id.*

Automatic meal break deductions are not a *per se* violation of the FLSA. *Lockhart v. Republic Servs.*, No. SA-18-CA-766-XR, 2020 WL 2308438, at *28 (W.D. Tex. May 8, 2020) (collecting cases).  "[T]here is no specific prohibition against requiring an employee to report having worked in order to receive pay for time worked." *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 320–21 (E.D.N.Y. 2014) (citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 356–57 (2d Cir.2011)).  "An employer's timekeeping policies are legal as long as they allow for the complete and accurate recording of all time worked." *Lockhart*, 2020 WL 2308438, at *28 (citing *Desilva*, 27 F. Supp. 3d at 321).

Accordingly, courts have refused to conditionally certify collective actions against employers whose "policies and procedures made it at least possible for employees to receive proper compensation" by amending their time sheets if and

when they worked through meal breaks.  *Desilva*, 27 F. Supp. 3d at 320–21.[30]  On

the other hand, courts have conditionally certified collective actions based on

automatic meal break deductions where employers "routinely ignored or

discouraged the use of time adjustment forms to reverse the automatic deduction."

*Lindberg v. UHS of Lakeside, LLC*, 2011 WL 204832 (W.D. Tenn., Jan.21, 2011).[31]

Even where employees are not discouraged from amending their time sheets

to correct automatic meal break deductions, courts have conditionally certified

collective actions where employees were expected to be on call during their meal

---

[30]     S*ee also Piazza v. Associated Wholesale Grocers, Inc.*, No. 17-10289, 2019 WL
1862645, at *2 (E.D. La. Apr. 25, 2019) (denying conditional certification where
Plaintiff claimed to be unaware of his ability to correct timesheets but "received a
copy of the AWG employee manual, and the manual provides that employees must
notify their managers to correct inaccurate timecards."); *Stepp v. Seton Family of
Hosps.*, A-16-CV-1251-RP, 2018 WL 7288767, at *5-*6 (W.D. Tex. Apr. 17, 2018)
(denying conditional certification of class of nurses subject to automatic meal
deductions where plaintiff "presented no evidence, nor any serious allegation, that
nurses are discouraged from cancelling the deduction of any meal break.") (*adopted
by* 2018 WL 7288766); *Cason v. Vibra Healthcare*, No. 10-10642, 2011 WL
1659381, at *3 (E.D. Mich. May 3, 2011) (denying conditional certification where
defendant presented evidence that employees routinely reported missed breaks and
were compensated for time worked during breaks).

[31]     *See also Abeldano v. HMG Park Manor of Westchase, LLC*, No. CV H-16-1044,
2016 WL 5848890, at *8 (S.D. Tex. Oct. 6, 2016) (conditionally certifying class of
workers subject to automatic meal deductions where workers were "scolded,
reprimanded, or their requests were ignored or otherwise discouraged" if they tried
to reverse the deductions.); *Myers v. Marietta Mem'l Hosp.*, 201 F. Supp. 3d 884,
895 (S.D. Ohio 2016) (conditionally certifying a class where plaintiffs alleged "that
they and other workers were often unable to take meal breaks and were discouraged
from canceling the automatic deduction when they could not take a break.").

breaks.[32]  For example, in *Colozzi v. St. Joseph's Hospital Health Center*, the court conditionally certified a class of nurses subject to an automatic meal deduction policy who regularly worked through their lunch breaks.  595 F. Supp. 2d 200, 209 (N.D.N.Y. 2009).  The *Colozzi* court declined to include in the class other hourly workers subject to the same automatic meal deduction policy because there was no showing that other hourly workers "need[ed] regularly to work through or during scheduled meal breaks, without compensation." *Id.*[33]

Here, although Putative Class Members had the ability to manually correct their automatic meal break deductions and were not discouraged from doing so, they were regularly expected to work through or be on call during their meal breaks.[34]

---

[32]  *Corcione v. Methodist Hosp.*, No. G–14–160, 2014 WL 6388039, at *6-*7 (S.D. Tex. Nov. 14, 2014) ("The case law supports conditionally certifying a class of employees subject to an automatic meal-break deduction who were required to be available for work-related interruptions during those breaks."); *cf. Bernard v. IBP, Inc.*, 154 F.3d 259, 264-65 (5th Cir. 1998) (The "critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee.").

[33]  *See also Ridley v. Regency Vill., Inc.*, No. CV H-17-974, 2018 WL 1334813, at *8 (S.D. Tex. Mar. 15, 2018) (finding proposed class of nurses subject to automatic meal break deductions were victims of a common policy based on "evidence that the nurses were subject to interruption during [their meal] breaks"); *Carter v. Jackson–Madison Cnty Hosp. Dist.*, No. 1:10–CV–01155–JDB, 2011 WL 1256625, at *7 (W.D. Tenn. Mar. 31, 2011) (conditionally certifying class of employees subject to an automatic meal-break deduction policy because employees had to respond to "requests by patients, coworkers, and supervisors" during uncompensated meal breaks and were thus not fully relieved of their duties).

[34]  Lobo Decl. ¶¶ 18-21; Essett Decl. ¶¶ 7-8.

Affidavits from Plaintiff and another Putative Class Member confirm that this practice took place at different job sites under the direction of different supervisors.[35] The Court concludes that Plaintiff has shown that the Putative Class Members were victims of a common policy or practice.

### 2.      Whether Putative Class Members Are Similarly Situated

Plaintiff argues he has met the second step of the *Lusardi* test—that "similarly situated" individuals exist—by demonstrating that all Putative Class members were subject to an automatic meal break deduction policy regardless of whether they were able to take a full uninterrupted lunch break and were expected to be on call during those breaks.[36]  In response, Defendant argues that Putative Class Members are not "similarly situated" because each turnaround project was different: Defendant claims that details of each turnaround project, including the number of Turnaround Technicians, Project Managers or Supervisors, the size of the project, and the type of equipment used on the project all affected how and when meal breaks were taken

---

[35]    Plaintiff need not prove at this preliminary stage that this policy was enforced by all of Defendant's supervisors at all of Defendant's job sites.  The exact application of this policy is an issue more appropriately dealt with at the "de-certification" stage after discovery.  *See Corcione*, 2014 WL 6388039, at *8 ("At this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to test the merits beyond showing that potential class members are similarly situated.").

[36]    Lobo Decl. ¶¶ 7-11; Essett Decl. ¶¶ 4-8.

by Turnaround Technicians and the ease with which a Turnaround Technician could get relief for a break.

To satisfy the "similarly situated" standard, a plaintiff must show that the putative class members are similarly situated "in relevant respects given the claims and defenses asserted." *Tolentino v. C & J Spec-Rent Servs. Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010). A plaintiff need not show that class members are "similarly situated in 'each and every aspect' of their employment," *Stein v. Office Depot, Inc.*, No. A-19-CV-01100, 2020 WL 3470511, at *4 (W.D. Tex. June 25, 2020) (quoting *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011)), but must show "some identifiable facts or legal nexus [that] bind the claims so that hearing the cases together promotes judicial efficiency." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010).

"[C]onditional certification is warranted when the putative class members are all affected by an automatic deduction policy and were subject to interruptions or actually interrupted on a regular or recurring basis during their meal breaks." *Corcione*, 2014 WL 6388039, at *7; *see also Straka v. Methodist Dallas Med. Center Aux.*, No. 3:16-CV-2192-B, 2018 WL 1611865, at *5 (N.D. Tex. Apr. 3, 2018) ("[Plaintiff] has demonstrated a reasonable basis for believing that [defendant's] nurses are similarly situated because [defendant's] policy of not paying its nurses for being subject to interruption during their meal breaks applies to all of its nurses.

[Plaintiff's] declarations indicate that [defendant] expects its nurses to respond to patient needs during their meal breaks."); *Abeldano*, 2016 WL 5848890, at *8 ("Plaintiffs have shown that putative class members are similarly situated, as they all have the same position and are subject to the same automatic deduction meal break policy.").

Plaintiff has presented evidence that Defendant automatically deducted meal breaks from Putative Class Members' wages.  Plaintiff has also shown that he and other Putative Class Members were expected to be on call during their meal breaks and were subject to interruptions on a regular or recurring basis.   Although Defendant has presented controverting evidence, "[a]t this early stage, in a motion for conditional certification, it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to test the merits beyond showing that potential class members are similarly situated."  *Corcione*, 2014 WL 6388039, at *8; *see also Ridley*, 2018 WL 1334813, at *8 ("Plaintiffs have presented evidence that all [class members] were subject to automatic deduction. . . . Plaintiffs have also presented evidence that the [class members] were subject to interruption during those breaks. . . . While [defendant] may contest the truth of those allegations, the court will not yet engage in merit-based arguments.").

Furthermore, while Defendant's evidence shows that Putative Class Members' ability to take uninterrupted meal breaks may have varied across job sites,

16

Defendant has not directly controverted Plaintiff's assertion that Putative Class Members were expected to be on call during those breaks.  *See Ridley*, 2018 WL 1334813, at *8 n.3 ("[T]o the extent that [defendant] argues that whether the meal breaks were actually interrupted is an individualized inquiry, it misses the mark. . . . Plaintiffs assert that regardless of whether a meal break was actually interrupted, the on-duty nurse was still entitled to compensation because of [defendant's] policy requiring nurses to stay on duty during their break. . . . Plaintiffs have a low bar to show that policy at this stage, and they have met that bar.").  Plaintiff has demonstrated that Putative Class Members are sufficiently "similarly situated" to satisfy the "lenient standard" applicable at the notice phase.  *Mooney*, 54 F.3d at 1214.[37]

### 3.    Whether Similarly Situated Individuals Want to Opt In

Plaintiff argues that he has presented evidence sufficient to show that other similarly situated individuals would opt in to a collective action against Defendant.

---

[37]    The DOL's prior investigation and sanction of Defendant for its use of automatic meal break deductions also weighs in favor of certification.  While DOL investigations and determinations are not dispositive as to whether an employer has violated the FLSA, *Pruneda v. Extreme Drilling & Coil Servs.*, No. 5:16-CV-091-DAE, 2017 WL 3023214, *11 n.6 (W.D. Tex. June 20, 2017) (collecting cases), the DOL's determination that Defendant's automatic meal break deduction policy violated the FLSA in a separate instance involving different work sites and supervisors supports a preliminary finding that aggrieved individuals are "similarly situated" to Plaintiff in relevant respects. *See* Exhibit E to Plaintiff's Motion, U.S. DOL Records, Case ID: 1773727, [Doc. # 36-5] at 4.

Plaintiff states in his declaration in support of his motion that he "believe[s] that many other Turnaround Technicians would be interested in making a claim to recover their unpaid wages if given the opportunity. . . ."[38]  Plaintiff also supports his Motion with a declaration by another Putative Class Member who indicates her desire to participate in this litigation.[39]  In the alternative, Plaintiff argues that it is not necessary to present evidence at the conditional certification stage that other similarly situated individuals want to opt in to the suit.  Defendant argues that Plaintiff must present evidence that other similarly situated individuals want to opt in to this suit before conditional certification can be granted, and that Plaintiff's "self-serving conclusory affidavit" that other individuals want to join the suit is insufficient.[40]

Several courts have held that a plaintiff seeking conditional certification need not present evidence that other class members are interested in joining the suit.[41]

---

[38]  Lobo Decl. ¶ 23.

[39]  *See* Essett Decl. ¶ 9 ("Based on my experiences and my conversations with my coworkers, I believe there would be others that would want to join this lawsuit if they were made aware of it and given an opportunity to join.").

[40]  Defendant's Response at 19 (internal citations omitted).

[41]  *See, e.g.*, *Argo v. Precision Drilling Co., LP*, No. 4:15-CV-00604, 2015 WL 9319233, at *1 (S.D. Tex. Dec. 23, 2015); *Jones v. Cretic Energy Servs., LLC*, No. H-15-0051, 2015 WL 8489978, at *4 (S.D. Tex. Dec. 9, 2015); *Gibson v. NCRC, Inc.*, No. H-10-1409, 2011 WL 2837506, at *7 (S.D. Tex. July 18, 2011);

These courts reason that requiring a plaintiff to demonstrate that others wish to join a collective action before notice is issued "creates a 'chicken and egg' problem," *Gibson*, 2011 WL 2837506, at *7, and is "at odds with the Supreme Court's command that the FLSA be liberally construed," *Dreyer*, 2008 WL 5204149, at *3. On the other hand, courts that require a plaintiff to present some evidence that other employees wish to opt in find that this requirement is "easily satisfied if there is some evidence that others are likely to want to join the litigation." *Pierce v. Apache Corp.*, No. H-18-1803, 2019 WL 338129, at *4 (S.D. Tex. Jan. 28, 2019). However, those courts "require more than a plaintiff's self-serving conclusory affidavit that fails to identify specific individuals that would want to join the suit." *Id.*

The Court need not decide whether a plaintiff must present some evidence that other employees wish to opt in in order to conditionally certify an FLSA collective action. Assuming this requirement applies, Plaintiff has met it. Plaintiff has submitted a declaration by another Putative Class Member that would join a collective action if certified.[42]  The Court concludes that Plaintiff has met the "lenient standard" for conditional certification of the collective action class he proposes. *Mooney*, 54 F.3d at 1214.

---

*Dreyer v. Baker Hughes Oilfield Operators, Inc.*, No. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008).

[42]    *See* Essett Decl.

19

### B.   Notice to Class Members

Plaintiff requests that the Court authorize the dissemination of notice to Putative Class Members through first class mail, email, and text message.  Plaintiff also requests that the Court authorize the sending of a reminder notice through first class mail, email and text message.  Defendant raises numerous objections to the form and content of Plaintiff's proposed notices.   Plaintiff maintains that Defendant's objections are meritless, but suggests that the parties first negotiate the form and contents of the notices among themselves prior to seeking Court approval of the notices.

The Court agrees with Plaintiff's suggestion.[43]  Plaintiff and Defendant shall promptly confer in good faith to negotiate the form and content of proposed notices to Putative Class Members.  Plaintiff and Defendant shall file within 21 days of this Order a status report attaching any agreed proposed notice forms and detailing any related disagreements.

### C.   Production of Class Members' Contact Information

Plaintiff requests that Defendant be ordered to produce the full names, email addresses, last known mailing addresses, cellular telephone numbers, dates of employment, location(s) of employment, and positions of all Putative Class

---

[43]   Reference to the Court's June 29, 2020 Memorandum and Order approving notice to class members in *Cruz v. 3F et al.*, No. 4:19-cv-4386, another FLSA collective action, may assist the parties in their negotiations.

Members.   Defendant does not directly respond to Plaintiff's request for this information, but opposes Plaintiff's request that notice be given by text message.

Names, addresses, email addresses, dates and locations of employment of potential plaintiffs are routinely ordered to be produced in FLSA collective actions to facilitate notice.  *See, e.g.*, *Garcia v. TWC Admin., LLC*, No. SA:14–CV–985–DAE, 2015 WL 1737932, at *4 (W.D. Tex. Apr. 16, 2015).   However, courts frequently limit the production or use of potential class members' telephone numbers due to the "highly private and sensitive nature of this information."  *Page v. Nova Healthcare Mgmt., LLP*, No. H–12–2093, 2013 WL 4782749, at *7 (S.D. Tex. Sept. 6, 2013).[44]

The Court concludes that Defendant's production of Putative Class Members' names, email addresses, last known mailing addresses, dates of employment as Turnaround Technicians, and job sites at which they worked as Turnaround

---

[44]    *See also Diaz v. USA Professional Labor, LLC*, No. 18-6580-WBV-KWR, 2019 WL 5725062, at *3 (E.D. La. Nov. 5, 2019) (ordering disclosure of potential class members' phone numbers because "[t]he Court finds that this is a case in which it may be especially difficult to give potential class members notice."); *Nabarrette v. Propetro Svcs., Inc.*, No. MO:15-CV-00211-RAJ, 2016 WL 7616717, at *8 (W.D. Tex. Apr. 4, 2016) ("telephone numbers shall be used only to verify addresses or e-mail addresses for potential opt-in plaintiffs."); *Page v. Crescent Directional Drilling, L.P.*, No. 5:15-CV-193-RP, 2015 WL 12660425, at *4 (W.D. Tex. Dec. 10, 2015) (ordering production of potential class members' phone numbers but requiring that plaintiff "only call potential class members once" and "hew directly to the script to be agreed upon, in good faith, by Defendant and Plaintiff" when calling potential class members).

Technicians in this case is appropriate.  Plaintiff may use this contact information *solely* to deliver notice as agreed by the parties or authorized by the Court.  The Court declines to order at this stage the production of Putative Class Members' cell phone numbers.  Plaintiff may request Putative Class Members' cell phone numbers at a later date if the Court orders dissemination of notice by text message.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion is **GRANTED in part and denied in part**.  The Court conditionally certifies a collective action class of:

> All Turnaround Technicians who were subject to Sprint Safety's automatic meal break deduction within the last three years

It is further

**ORDERED** that the parties must file **within twenty one (21) days** of this Order a status report attaching any agreed proposed notice forms and setting forth the parties' respective positions on any notice-related disputes.  It is further

**ORDERED** that Defendant must produce to Plaintiff **within fourteen (14) days** of this Order the names, email addresses, last known mailing addresses, dates of employment as Turnaround Technicians, and location(s) of employment of all Putative Class Members.  It is further

**ORDERED** that the status conference scheduled for August 4, 2020 is **RESCHEDULED** to **October 13, 2020 at 1:00 p.m.**

SIGNED at Houston, Texas, this 2$\underline{^{nd}}$ day of **July, 2020**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE

23